UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
                                 |

CHRISTOPHER GONYER, ERIC BRIDGES, and  |
MARK MILLS, individually and on behalf of all  |   Case No.:  13-CIV-8488 (RJS)
others similarly situated,  |
                                 |

              Plaintiff,  |

          vs.  |

VANE LINE BUNKERING, INC., d/b/a VANE  |
LINE BROTHERS COMPANY,  |
                                 |

             Defendant.  |

----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING DEFENDANT'S MOTION TO RESCIND RULE 68 OFFER OR NULLIFY PLAINTIFF'S ACCEPTANCE THEREOF

**GORDON & REES, LLP**
ATTORNEYS FOR DEFENDANT
90 BROAD STREET, 23RD FLOOR
NEW YORK, NEW YORK 10004
PHONE: (212) 269.5500
FAX:   (212) 269.5505

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY..........................................2

LEGAL ARGUMENT.....................................................................................................6

I.      THE STANDARD ................................................................................................6

II.     DEFENDANT IS ENTITLED TO RESCISSION OR VOIDING OF THE
        OFFER .................................................................................................................7

        A.      The October 14th Decision Overlooks Considerable Case Law Holding That
                Filing A Notice Of Consent Under 29 U.S.C. § 216 Does Not Confer
                Independent Party Status To The Signatory Of That Notice ...................................9

        B.      The October 14th Decision Overlooks The Law Regarding The Ability Of
                The Lead Plaintiff To Bind The Members Of The Collective Action To A
                Final Judgment................................................................................................11

        C.      The October 14th Decision Overlooked The Well-Settled Pleading Rules
                That Apply Outside Of The Class Action Context, And Preclude A Plaintiff
                From Acquiring Independent Party Status In A Case Merely By Filing A
                Two-Line Notice Of Consent That Does Not Assert Any Claims Or Plead
                Any Factual Allegations ...................................................................................14

        D.      The October 14th Decision Conflicts With The Court's Prior Rulings In This
                Case................................................................................................................15

CONCLUSION................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ............................................................................................ 14

*Banco de Seguros del Estado v. Mut. Marine Offices, Inc.*
   230 F. Supp. 2d 427 (S.D.N.Y. 2002) ................................................................ 6

*Boggs v. Die Fliedermaus, LLP.*
   286 F. Supp. 2d 291 (S.D.N.Y.2003) ................................................................ 6

*Cahill v. City of New Brunswick*
   99 F. Supp. 2d 464 (D.N.J. 2000) ................................................................ 9, 11

*Doe v. Advanced Textile Corp.*
   214 F.3d 1058 (9th Cir. 2000) ..................................................................... 9, 11

*Hunter v. Sprint Corp.*
   346 F. Supp. 2d 113 (D.D.C. 2004) ................................................... 9, 11, 12, 14

*Johnson v. Big Lots Stores, Inc.*
   561 F. Supp. 2d 567 (E.D. La.2008) .................................................................. 10

*Kremnitzer v. Cabrera & Rephen, P.C.*
   202 F.R.D. 239 (N.D. Ill. 2001) ............................................................... 7, 8, 15

*Louisdor v. Am. Telecomm., Inc.*
   540 F. Supp. 2d 368 (E.D.N.Y. 2008) ........................................................ 10, 11

*McDowall v. Cogan*
   216 F.R.D. 46 (E.D.N.Y. 2003) ............................................................... 7, 8, 15

*Morris v. Affinity Health Plan, Inc.*
   558 Fed. Appx. 51 (2d Cir. 2014) ...................................................... 10, 11, 12, 13

*Scholtisek v. Eldre Corp.*
   229 F.R.D. 381 (W.D.N.Y. 2005) ............................................................... 12, 13

*Scott v. Aetna Servs., Inc.*
   210 F.R.D. 261 (D. Conn. 2002) ....................................................................... 12

*Shain v. Armour & Co.*
   40 F. Supp. 488 (D. Ky. 1941) .................................................................... 10, 11

*Shrader v. CSX Transp., Inc.*
   70 F.3d 255 (2d Cir. 1995) ................................................................................. 6

*Vogel v. Am. Kiosk Mgmt.*
   371 F. Supp. 2d 122 (D. Conn. 2005) ..................................................... 7, 8, 10, 15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Statutes**

29 United States Code
    section 216 ................................................................................................ 1, 7, 9, 12

**Rules**

Federal Rules of Civil Procedure
    rule 23 ............................................................................................. 3, 6, 8, 9, 10, 13

Federal Rules of Civil Procedure
    rule 68 ................................................................................................. 1, 5, 6, 7, 8

## PRELIMINARY STATEMENT

Defendant Vane Line Bunkering, Inc. ("Defendant") respectfully submits this memorandum of law in support of its motion for reconsideration of the Court's October 14, 2014 Order and Memorandum of Decision denying Defendant's motion, *inter alia*, to rescind the offer of judgment previously issued to plaintiff Christopher Gonyer ("Gonyer" or "Plaintiff") pursuant to Fed. R. Civ. P. 68 (the "Offer"), or in the alternative, to void Gonyer's acceptance thereof (the "Motion to Rescind").

As explained below, it appears from the Court's October 14th Order and Memorandum of Decision (the "October 14th Decision") that the Court denied Defendant's Motion to Rescind based on the mistaken belief that the filing of a "notice of consent" pursuant to 29 U.S.C. § 216 does not render the signatory a member of the collective action pled by the named plaintiff (*i.e.,* the "adverse party" to whom a Rule 68 offer has been made), but instead joins the signatory as a separate party, imbuing him or her with the same independent status as a plaintiff who satisfied the burden of pleading factual allegations plausibly stating a claim upon which s/he personally can recover damages.  (Doc. No. 106 at pp. 2-3)  Defendant respectfully submits that this proposition is incorrect, as it overlooks controlling law in at least three different areas and ultimately conflicts with this Court's own prior rulings in this case.

First, the October 14th Decision overlooks the case law holding that the filing of a notice of consent binds the signatory to a final judgment reached on the collective action claim pled by the named plaintiff.  Second, the October 14th Decision is contrary to the substantial body of case law making clear that an opt-in plaintiff's involvement in a case will cease upon the decertification of the "collective action" s/he "opted into" under 29 U.S.C. § 216.  Third, the October 14th Decision overlooks the well-settled pleading requirements that bar plaintiffs outside of the group action context from proceeding in litigation based upon a "consent" that does not

assert any claims, does not plead any factual allegations, does not incorporate by reference any allegations pled by any other plaintiffs, does not reference any statutory provisions, and does not even identify the case into which s/he is seeking to opt. Finally, the Court's treatment of the opt-in plaintiffs as parties separate and distinct from Gonyer conflicts with the Court's own prior statements regarding Defendant's ability to draft the Offer in a manner that would have resulted in Gonyer's acceptance terminating the (unpled) claims of the opt-in plaintiffs. The Court's prior rulings presume that Gonyer had the authority to bind the opt-in plaintiffs to a final judgment, while its latest ruling holds the opposite.

Importantly, reconsidering and reversing the October 14th Decision is an equitable result that will not prejudice Gonyer. Defendant does not seek to dismiss Gonyer from the action. Reversal of the October 14 Decision will merely return Gonyer to this action – limitations period intact – as a lead plaintiff representing a group of allegedly similarly situated persons. He will have his day in court with a full and fair hearing of his claims, and he will receive whatever remedy to which he is entitled, if any.

Accordingly, for the reasons set forth below, Defendant respectfully requests the Court reconsider its October 14th Decision.[1]

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On November 27, 2013, Gonyer filed a Complaint alleging Defendant had classified him and other allegedly similarly-situated Vane Line tankermen improperly as exempt "seamen" under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and, as such, had failed to pay him and such other individuals an overtime premium in purported violation of the FLSA and NYLL. (Doc. No. 1 at ¶¶ 2, 7-8) Gonyer asserted two claims: an

---

[1]     Because the outcome of Defendant's motion for reconsideration not only will impact, but may moot the issue of counsel's fees with regard to Gonyer, Defendant also requests that the briefing on the legal fees application be stayed until resolution of this motion.

FLSA claim "on behalf of himself and similarly situated current and former tankermen nationwide who elect to opt-in to this action pursuant to the FLSA" (*Id.* at ¶ 7), and a NYLL claim as a traditional class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all similarly situated tankermen who performed work for Defendant in the State of New York within the relevant time period. (*Id.* at ¶ 45)   Gonyer asserted no other claims in the Complaint. (*See* Doc. No. 1.)   This was true on November 27, 2013, and it remained true when Gonyer subsequently accepted the Offer on May 29, 2014. (*Id.*)

Defendant issued the Offer on May 12, 2014 in order to resolve "*all claims (federal and state) asserted against Defendant in this action.*" (Doc. No. 55 Ex. 1) (emphasis added).[2] Critically, as of the time of both the making and acceptng of the Offer, the *only* claims actually pled in the Complaint were the two that had been asserted by Gonyer. (*See* Doc. No. 1)

Indeed, for 15 days after the issuance of the Offer, *i.e.,* May 12, 2014 to May 27, 2014, (or at any time in the previous six months of litigation), Plaintiff's counsel did not add any additional parties or plead any new claims in addition to those asserted by Gonyer in the original Complaint.  Rather, he waited until May 28, 2014, the day before the Offer was set to expire, to file on behalf of Eric Bridges, Alfred LeBlanc, and David Ferace (collectively, the "opt-in plaintiffs") notices of consent to join "this action" or "any subsequent action" against the "Vane Brothers" to recover "unpaid wages." (Doc. Nos. 51-53) (the "Notices").  The Notices neither purported to assert any individualized claims on behalf of the opt-in plaintiff, nor did they contain any factual allegations that would plausibly state individualized claims for relief under

---

[2]        To the extent the Court stated in its October 14th Decision that "Defendant does not event attempt to argue that the offer it made was contingent on Plaintiff's acceptance terminating all potential claims against Defendant," it appears the Court overlooked the numerous occasions on which the Defendant specifically argued just that.  (*See* Doc. No. 99 at p.  2 ("The primary reason Defendant made this Offer was to resolve *all* claims asserted in this litigation"); Doc. No. 78 at p. 2 (same); Doc. No. 104 at 2:16-19 (while the Offer "was not conditioned on no other plaintiffs bringing an action separately against Vane Line[,][i]t was, however, expressly conditioned on … all claims Federal and State asserted against defendant in this action [sic] being extinguished [sic].""))

the FLSA or NYLL, independent from the two claims Gonyer had pled in the Complaint. Rather, the bare-bones Notices merely stated:

> I consent to be a party plaintiff in this action and, if necessary, a subsequent action, to recover any unpaid wages owed to me by Vane Brothers.

(Doc. Nos. 51-53)

No claims or factual allegations were set forth in the Notices and they did not seek to incorporate the factual allegations set forth by Gonyer in the Complaint.  (*Id.*)  In fact, the Notices did not even refer to this particular action by name.  (*Id.*)  To the contrary, they stated only that the opt-in plaintiffs consented to join both "this action and, if necessary, a subsequent action," without defining to what "this action" or "subsequent action" referred.  (*Id.*)  Likewise, the Notices provided no insight into the type of "unpaid wages" the opt-in plaintiffs believe they are owed, or even identify the statutes upon which they rely.  (*Id.*)

Immediately after the Notices were filed, on May 28, 2014, Plaintiff's counsel filed a letter advising the Court that Gonyer was accepting the Offer.  (Doc. No. 54)  Importantly, at the time Gonyer communicated his acceptance of the Offer to the Court, none of the opt-in plaintiffs had asserted any claims or factual allegations, either in the Complaint or in the Notices. (See Doc. Nos. 1, 51-53.)  Thus, what was true on November 27, 2013, remained true at the time Gonyer accepted the Offer:  Gonyer was the *only* individual who had asserted any claims in the Complaint, and the *only* person who had pled any factual allegations to support a claim for relief under the FLSA or NYLL.  (*Id.*)  In fact, it was not until the opt-in plaintiffs filed their Amended Complaint on August 1, 2014, more than two full months *after* Gonyer communicated his acceptance of the Offer to the Court, that anyone aside from Gonyer asserted any individual claims against Defendant in this matter. (Doc. No. 74)  Consequently, between May 29, 2014 (the date of Plaintiff's acceptance) and August 1, 2014 (the date on which the opt-in plaintiffs

4

filed an amended complaint asserting individual claims against Defendant for the first time), there were *no* claims pending before the Court in this matter.

Although Defendant objected to the 11th-hour filing of the non-descript Notices on July 25, 2014, the Court overruled that objection, retroactively allowed the filings, and ruled that the opt-in plaintiffs had effectively become parties to this litigation upon filing the Notices. (Doc. No. 73.)   In its Memorandum of Decision, the Court acknowledged that in essence invited Defendant to file a pre-motion conference letter if Defendant intended to seek rescission of the Offer given the "ethically suspect" circumstances under which it was accepted. (*Id.* at p. 5.)

Defendant followed the Court's suggestion and, on August 15, 2014, Defendant filed a pre-motion conference letter expressing its intent to file the Motion to Rescind. (Doc. No. 78)   At a September 2, 2014 pre-motion conference, the Court granted Defendant permission to file its motion.  Defendant filed the Motion to Rescind on September 16, 2014.  (*See* Doc. No. 99.)   In support of the Motion to Rescind, Defendant argued, *inter alia*, that if the 11th-hour filing of the Notices was sufficient to add the opt-in plaintiffs to the case, as the Court ruled on July 25, 2014 (Doc. No. 73), the result would be the nullification of the Offer prior to Gonyer's acceptance. The reasoning behind this conclusion was (and remains) twofold:  First, in the absence of any individualized claims or allegations by the opt-in plaintiffs, the filing of the Notices could only be said to have added the opt-in plaintiffs to the group of alleged "similarly situated individuals" on whose behalf Gonyer had pled collective and class actions claims.  (*See* Doc. No. 99 at pp. 5-9)  Second, the addition of the opt-in plaintiffs to Gonyer's "collective action" constituted a "material change" to the "adverse party" to whom the Offer was made, changing the recipient from a single plaintiff to a group of individuals represented by a lead plaintiff in a representative action and effectively nullifying the Offer as a matter of law.  (*Id.*)  Defendant cited case law from both this Circuit and elsewhere, holding that when a Rule 68 offer has been made to the

lead plaintiff in a case in which s/he has pled representative claims on behalf of a "similarly situated" group of individuals, the addition of such individuals to the "adverse party" to whom a pending Rule 68 offer has been made constitutes a "material change" to the case, thus voiding the offer as a matter of law. (*Id.*)

On October 14, 2014, without receiving any opposition from Plaintiff or case law to the contrary, the Court denied Defendant's Motion to Rescind.  The Court reasoned that Defendant's reliance on the above-referenced rule is misplaced because each of the cases cited by Defendant was "a Rule 23 class certification case rather than an FLSA collective action." (Doc. No. 106 at p. 1)   However, as explained below, for purposes of Defendant's Motion to Rescind, this is a distinction without a difference, and is ultimately premised upon an erroneous rationale that overlooks controlling law in three different areas, overlooks relevant facts present in the case, and contradicts the Court's own prior rulings in this matter.

Accordingly, Defendant respectfully requests the Court reexamine the October 14th Decision and grant Defendant's Motion to Rescind.

## LEGAL ARGUMENT

### I.  THE STANDARD

"A motion for reconsideration is appropriate where a court overlooks 'controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the court.'" *Boggs v. Die Fliedermaus, LLP.*, 286 F. Supp. 2d 291, 295-296 (S.D.N.Y.2003) (quoting *Banco de Seguros del Estado v. Mut. Marine Offices, Inc.*, 230 F. Supp. 2d 427, 428 (S.D.N.Y. 2002)); see also Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (reconsideration is warranted where "the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the

court.")

In applying this standard here, Defendant's motion for reconsideration of the October 14th Decision should be granted.

## II.  DEFENDANT IS ENTITLED TO RESCISSION OR VOIDING OF THE OFFER

As explained in Defendant's Motion to Rescind, certain events in litigation nullify a pending Rule 68 offer as a matter of law.  *See e.g.*, *McDowall v. Cogan*, 216 F.R.D. 46, 49-50 (E.D.N.Y. 2003); *Vogel v. Am. Kiosk Mgmt.*, 371 F. Supp. 2d 122 (D. Conn. 2005); *Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239, 243-44 (N.D. Ill. 2001).  One such event arises in cases involving claims pled by a single named-plaintiff on behalf of a group of not-yet-identified "similarly situated" individuals, such as collective actions under 29 U.S.C. § 216 and class actions under Rule 23.  In such cases, the addition of individuals to the group of persons on whose behalf the representative claim is asserted will nullify a pending Rule 68 offer made to the lead plaintiff asserting that claim, because the addition of such individuals transforms the "adverse party" to whom the offer was made from a single plaintiff to a group of individuals represented by a lead plaintiff in a representative action.  *See e.g.*, *McDowall*, 216 F.R.D. at 49-50; *Kremnitzer*, 202 F.R.D. at 243-44.

The rationale for this rule was aptly summarized in *Kremnitzer*, where the court noted in the class certification context that when such a transformation occurs, the number of individuals in the case soars from a "single plaintiff" to "dozens, scores, or even hundreds of individuals," with the amount of claimed damages following a comparable upward trajectory.  *Id.* at 243-44 (citations omitted).  "In light of these material changes, the 'adverse party' to whom the Rule 68 offer of judgment was directed … disappears, taking with it the Rule 68 offer of judgment that once pended against it."  *Id.*  This reasoning has been endorsed by courts within this Circuit. *See e.g.*, *McDowall*, 216 F.R.D. at 49-50; *Vogel*, 371 F. Supp. 2d at 125-127 (same).

7

In this case, the "adverse party" to whom Defendant's Offer was made underwent the same transformation that occurred in *Kremnitzer, McDowall* and *Vogel* when the opt-in plaintiffs filed the Notices to join the case, the only difference being the *vehicle* by which that transformation occurred, *i.e.,* filing notices of consent to join a collective action versus class certification in a Rule 23 case.   That difference is one in name only, without any substantive effect.   In both scenarios the result is the same:   the "adverse party" to whom the offer of judgment was made is transformed from a single plaintiff (asserting a representative claim on behalf of a group of not-yet-identified individuals) into a group of individuals represented by a lead plaintiff on a group-based claim.   Accordingly, when the opt-in plaintiffs filed the Notices, "the 'adverse party' to whom [Defendant's] Rule 68 offer of judgment was directed … disappear[ed], taking with it the Rule 68 offer of judgment that once pended against it." *Kremnitzer*, 202 F.R.D. at 243-244.

Nevertheless, in its October 14th Decision, the Court denied Defendant's Motion to Rescind finding that the above-cited cases are distinguishable, because each was "a Rule 23 class certification case" whereas this matter involves a "FLSA collective action."  (Doc. No. 106 at p.

1)   According to the Court, this distinction was critical, because

> [i]n the Rule 23 context, 'each person within the [class] description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he has opted out' of the suit. ... By contrast, the FLSA provides that 'no person will be bound by or may benefit from judgment **unless he has affirmatively 'opted into' the class.'** ... Thus, under Rule 23, certification of the class changes the 'adverse party' to whom the offer is addressed from the individual named plaintiff to the entire class, but under FLSA collective actions, the individual named plaintiff remains a separate party to the action even after opt-in plaintiffs join the case. Consequently, Plaintiff Gonyer remains the 'adverse party' to whom the Rule 68 Offer was made and there was no 'material change' in the litigation.

(Doc. No. 106 at p. 2) (internal citations omitted) (emphasis added).

Thus the Court's ruling is based upon the belief that the filing of the Notices imbued the opt-in plaintiffs with independent party plaintiff status, as opposed to adding them to the pre-exiting collective action pled by Gonyer, *i.e.,* the "adverse party" to whom to whom Defendant's Offer was made.[3]   (*Id.*)   Respectfully, the Court's reasoning is mistaken and should be reconsidered.

## A.   The October 14th Decision Overlooks Considerable Case Law Holding That Filing A Notice Of Consent Under 29 U.S.C. § 216 Does Not Confer Independent Party Status To The Signatory Of That Notice.

The Court's primary basis for denying Defendant's Motion to Rescind relied upon a misapprehension of the legal effect of filing a notice of consent to join a collective action pursuant to 29 U.S.C. § 216: namely, that it does not render the signatory a member of the collective action pled by the named plaintiff, but instead confers independent party status upon the signatory of that notice.

However, it is well-settled that the filing of a "notice of consent" to join a collective action pursuant to 29 U.S.C. § 216 "does *not* turn an employee into a named plaintiff, but is merely the mechanism by which an employee opts in to a collective action class that is represented by the named plaintiffs."  *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 117 n. 2 (D.D.C. 2004) (citing 29 U.S.C. § 216(b)) (emphasis added); *see also Doe v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000); *Cahill v. City of New Brunswick*, 99 F. Supp. 2d 464, 479 (D.N.J. 2000).

Indeed, as is true for traditional class actions, when other individuals become part of a FLSA "collective action" by filing notices of consent pursuant to 29 U.S.C. § 216, those individuals become represented in the proceeding by the named plaintiff who asserted the

---

[3]   To the extent the Court premised the October 14th Decision upon each cited case being "a Rule 23 class certification case" (Doc. No. 106 at p. 2), it neglects that (a) Gonyer has also pled a "Rule 23 class certification" claim (Doc. No. 1 at ¶¶ 45-56), and (b) the two-line notices of consent filed by the opt-in plaintiffs were not limited to his FLSA claim (or even the claims asserted in this case for that matter).  (Doc. Nos. 51-53)

"collective action;" they are bound by any judgment rendered or settlement reached by the lead plaintiff in that case. *See e.g.*, *Morris v. Affinity Health Plan, Inc.*, 558 Fed. Appx. 51, 53, (2d Cir. 2014).

In *Morris*, the Second Circuit held that a lead plaintiff who asserts both a collective action under the FLSA and Rule 23 class action has the authority to bind the class members to any judgment or settlement.   In doing so, the Second Circuit explicitly rejected plaintiffs' argument that the "opt-in vs. opt-out" distinction between collective and class actions prevents the lead-plaintiff from "ending the lawsuit in its entirety" over the objection of individuals seeking to keep the litigation open by filing an amended complaint.   The Court explained:  "the fact that the settlement resolved the NYLL claims through Rule 23 in no way diminishes the fact that a collective action is a representative action, which its representatives may also settle.   *Id.*; *see also Shain v. Armour & Co.*, 40 F. Supp. 488, 490 (D. Ky. 1941) (once "employees similarly situated for whom recovery is sought" file notices of consent to join a collective action asserted under the FLSA, the named plaintiff is "designated by them as the agent or representative to maintain such action in their behalf" and, as such, "final judgment, either in favor of or against the [named] plaintiff, is res judicata as to all the members of the class") (citations omitted); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 572 (E.D. La. 2008) (like Rule 23 class actions, a collective action under the FLSA is a "litigation device [that] operate[s] to resolve the claims of many individuals based on representative evidence" presented by the lead plaintiff on behalf of those who "opt-in" to the suit, as opposed to one that involves "trying many individual employees' claims that present common factual and legal questions separately"); *Louisdor v. Am. Telecomm., Inc.*, 540 F. Supp. 2d 368, 373 (E.D.N.Y. 2008) (in a collective action, the "Plaintiff has no right to represent any other individuals *unless they opt in to the action*.") (emphasis added); *Vogel*, 371 F. Supp. 2d at 125-127 (noting that, under Section 216 of the FLSA, any

person who "has affirmatively 'opted into' the class" will "be bound by [and] may benefit from judgment" on the collective action claim asserted by the lead plaintiff) (citations omitted).

Thus, to the extent the October 14th Decision was premised upon the belief that an opt-in vs. opt-out distinction between class and collective actions somehow provides an opt-in plaintiff with "independent" standing separate from that of the named-plaintiff to whom the Offer was made, it appears the Court overlooked the considerable body of case law that holds to the contrary.  *See e.g.*, *Morris*, 558 Fed. Appx. at 53; *Hunter*, 346 F. Supp. 2d at 117 n. 2; *Doe*, 214 F.3d at 1064; *Cahill*, 99 F. Supp. 2d at 479; *Shain*, 40 F. Supp. at 490; *Louisdor*, 540 F. Supp. 2d at 373.

Accordingly, Defendant respectfully requests the Court reconsider its October 14th Decision and grant Defendant's Motion to Rescind insofar as it posited that the Offer had been nullified prior to Gonyer's acceptance.

**B.  The October 14th Decision Overlooks The Law Regarding The Ability Of The Lead Plaintiff To Bind The Members Of The Collective Action To A Final Judgment.**

In addition to overlooking the above-cited case law rejecting the proposition that the opt-in vs. opt-out distinction between collective and class actions provides opt-in plaintiffs with independent party status, the Court also appears to have overlooked the considerable case law holding an opt-in plaintiff's involvement in a case is not independent of the lead plaintiff, but is contingent entirely upon the continued existence of the lead plaintiff's "collective action."

In fact, this very observation is the reason why opt-in plaintiffs like those here have not been permitted to proceed to trial on their own individual claims when, after initial conditional certification a court subsequently determines that the collective action should be decertified.  In such an event, the opt-in plaintiffs will be dismissed from this case without prejudice and the lead plaintiff will proceed to trial on his/her own individual overtime claim. *See e.g.*, *Scholtisek*

*v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005) (collective action involves a lead-plaintiff asserting a "representative claim" on behalf of those who opt-in; if the court decertifies the collective action, opt-in plaintiffs do not proceed to trial with their own claims; "the claims of the opt-in plaintiffs are dismissed without prejudice. The class representatives then proceed to trial on their individual claims."); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 264 (D. Conn. 2002) (same).

These well-settled principles, each of which appears to have been overlooked, severely undermine the Court's primary rationale for denying Defendant's Motion to Rescind as stated in the October 14th Decision: that because of the "opt-out vs. opt-in" distinction between class and collective actions, the filing of the Notices by the opt-in plaintiffs did not transform the "adverse party" to whom Defendant's Offer had been made from a single plaintiff representing only himself into a lead-plaintiff representing multiple individuals on a collective or class-based claim. (See Doc. No. 106 at pp. 2-3)

As explained, however, as a matter of law, the filing of a "notice of consent" to join a collective action pursuant to 29 U.S.C. § 216 "does _not_ turn an employee into a named plaintiff, but instead is merely the mechanism by which an employee opts in to a collective action class that is represented by the named plaintiffs." *Hunter*, 346 F. Supp. 2d at 117 n. 2. For precisely this reason, once such individuals file notices of consent under the statute, their interest in the litigation is contingent entirely upon the continued existence of the "collective action" asserted by the lead plaintiff on behalf of other similarly situated individuals. *Id.*; *see also Morris*, 558 Fed. Appx. at 53; *Scholtisek*, 229 F.R.D. at 387. Thus, while the opt-in plaintiffs remain in the case, the lead plaintiff has the authority to represent their interest in the litigation and terminate the proceeding on their behalf, and the opt-in plaintiffs will be bound by any final judgment rendered on the lead plaintiff's representative claim. *Morris*, 558 Fed. Appx. at 53.

Consequently, if the collective action claim is extinguished via decertification by the Court, so too is the right of any opt-in plaintiff to remain in the case. *Scholtisek*, 229 F.R.D. at 387.

Stated simply, if the filing of notices of consent to join a collective action truly afforded opt-in plaintiffs the same legal status afforded to plaintiffs who become an independent party to the proceeding, their interest in the case would not be entirely dependent upon the lead-plaintiff's ability to satisfy the burden of showing that the collective action should be permitted to proceed to trial as a representative claim; rather, each plaintiff would be proceeding to trial on his or her own individualized claims. Yet in reality, the opposite is true: long-standing precedent provides that the opt-in plaintiffs must be dismissed without prejudice in the event the court decertifies the collective action at a later stage in the litigation. *Scholtisek*, 229 F.R.D. at 387. Therefore, even if the Court were correct in its prior ruling that, by filing the two-line, non-descript Notices, the opt-in plaintiffs joined this case (which Defendant does not concede), they clearly did so as members of the collective action asserted by Gonyer, and once they did, the "adverse party" was irretrievably transformed and the Offer was nulled.

Based upon its October 14th Decision, it does not appear that these principles were considered when the Court denied Defendant's Motion to Rescind. While the Court correctly observed that, in the Rule 23 context, each class member is bound by the judgment unless he opts out of the suit, whereas "the FLSA provides that 'no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class'" (Doc. No. 106 at p. 2), it did not account for the fact that this "opt-in vs. opt-out" distinction becomes irrelevant to the issue at hand (*i.e.,* the specific moment at which the "adverse party" to whom a pending Rule 68 transforms from a single plaintiff to a group of individuals), once other individuals have "affirmatively opted into the class." *See Morris*, 558 Fed. Appx. at 53. Here, if the Court follows

it's own ruling, that happened when the opt-in plaintiffs filed the Notices, and thus, because they were thus part of Gonyer's collective action, the Offer ceased to exist by force of law.

Accordingly, Defendant respectfully requests the Court reconsider its October 14th Decision and grant Defendant's Motion to Rescind to the extent that it requested the nullification of the Offer prior to Gonyer's acceptance.

### C. **The October 14th Decision Overlooked The Well-Settled Pleading Rules That Apply Outside Of The Class Action Context, And Preclude A Plaintiff From Acquiring Independent Party Status In A Case Merely By Filing A Two-Line Notice Of Consent That Does Not Assert Any Claims Or Plead Any Factual Allegations.**

Holding that the sudden addition of the opt-in plaintiffs to Gonyer's collective action did not change the "adverse party" to whom Defendant's Offer was made because the Notices vested the opt-in plaintiffs with independent party status is tantamount to holding that a plaintiff who files a two-line, non-descript notice of consent has stated an independent individual claim for relief under the FLSA, notwithstanding the absence of factual allegations that would satisfy the burden to state a plausible claim upon which relief may be granted as to that individual's claims. As the court aptly stated in *Hunter*, above, "the collective action device is not designed, or properly used, as an end-run around a formal amendment of the pleadings and the addition of appropriate named plaintiffs." *Id.* at 120. Thus, the only way that the opt-in plaintiffs could have possibly obtained the type of independent party plaintiff status that would justify the Court's ruling that their entry into this case did not change the "adverse party" to whom Defendant's Offer was made would be if they satisfied the standard pleading requirements that all other plaintiffs must meet in order to state a claim upon which relief may be granted. *Id.*

Those requirements cannot be met in the absence of actual factual allegations showing the plaintiff has a plausible claim for relief, Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009), and it is clear that a plaintiff cannot possibly satisfy this threshold requirement merely by  filing a two-

14

line notice of consent to join *any* litigation involving a demand from Defendant for "unpaid wages" by any other individual, for any reason whatsoever, particularly where that notice:  (1) does not assert any claims or factual allegations particular to the signatory; (2) does not incorporate by reference any allegations pled by any other plaintiffs; (3) does not reference any statutory or other provisions pursuant to which relief might be granted; (4) does not articulate the nature of or basis for the relief purportedly being sought beyond a vague reference to "unpaid wages"; and, (5) does not even identify the actual litigation which the signatory is consenting to join.

Yet that is precisely what the opt-in plaintiffs filed here.  (*See* Doc. No. 51-53)  Even if the Notices were sufficient to add the opt-in plaintiffs to this case (a point Defendant is not conceding), the only possible interest they could have acquired in this litigation, in the absence of any individual factual allegations or claims, is membership in the collective action asserted by Gonyer.  As such, without question, the filing of these notices transformed the "adverse party" to whom Defendant's Offer was made from a single plaintiff into a group of individuals represented by a lead plaintiff on a class-based claim, which nullified that Offer prior to Gonyer's acceptance.  *See Kremnitzer*, 202 F.R.D. at 243-244; *McDowall*, 216 F.R.D. at 49-50; *Vogel*, 371 F. Supp. 2d at 125-127.

Accordingly, Defendant respectfully requests the Court reconsider its October 14th Decision and grant Defendant's Motion to Rescind to the extent that it requested the nullification of the Offer prior to Gonyer's acceptance.

### D.  <u>The October 14th Decision Conflicts With The Court's Prior Rulings In This Case.</u>

Finally, the Court's ruling that the opt-in plaintiffs became independent party plaintiffs upon filing the Notices conflicts with the Court's prior ruling on July 25, 2014, and its subsequent statements at the September 2, 2014 pre-motion conference, incorporated by

reference in the October 14, 2014 Order, regarding Defendant's ability to word the Offer in a way that would have resulted in the termination of the unpled claims of the opt-in plaintiffs upon Gonyer's acceptance.   Specifically, in both its July 25th decision and at the pre-motion conference, the Court indicated that one of the fundamental reasons it was permitting the opt-in plaintiffs to continue litigating this case and denying Defendant's Motion to Rescind, was that Defendant could conceivably have drafted the Offer in a way that would have resulted in the termination of the (unpled) claims of the opt-in plaintiffs upon Gonyer's acceptance of the Offer. (Doc. No. 73 at p.5; Doc. No. 102 at 12:2-13:10)   Although Defendant vigorously denies that the Offer made to Gonyer did not do exactly that, it is noteworthy that the Court's position presupposes that, following the filing of the Notices, Gonyer did, in fact, possess the authority to bind the opt-in plaintiffs to a final judgment; otherwise, it would be impossible for Gonyer's acceptance of an Offer to terminate claims asserted by individuals with "independent" claims and standing in the case, who were not a party to the proceeding at the time the Offer was made.[4]

Accordingly, Defendant respectfully requests the Court reconsider its October 14th Decision and grant Defendant's Motion to Rescind to the extent that it requested the nullification of the Offer prior to Gonyer's acceptance.

## CONCLUSION

As explained above, the Offer was extinguished the instant the opt-in plaintiffs filed the Notices.   Defendant respectfully submits that the Court's decision to the contrary runs counter to the law for several reasons, each independently sufficient to warrant reconsideration and reversal.   First, the opt-in plaintiffs do not become independent, individual parties by filing the

---

[4] The Court chastised Defendant, as master of its Offer, for failing to word the Offer as precisely as necessary to achieve Defendant's goal of ending the litigation.   Likewise, the opt-in plaintiffs (or their counsel) were masters of the Notices and, as such, chose to file last-minute, two-line "consents" bereft of factual allegation or useful information.   Defendant respectfully urges the Court to hold the Notices to the same exacting standard as that to which it held the Offer.

Notices.  The law is clear:  filing a notice of consent to opt into a FLSA collective action joins the signatory to the collective claim asserted by the named plaintiff, nothing more.

Second, a lead plaintiff is empowered to bind members of the group, be it opt-in or opt-out.  Once an individual has filed a notice of consent, that group member's claims survive only so long as the collective action exists; if the group ultimately is decertified, the opt-ins (and opt-outs) are dismissed.  The Court's prior ruling held that by filing the Notices, the opt-in plaintiffs affirmatively opted into the action.  Because this made them part of the group – members who would be bound by Gonyer's decisions – and not individual members, relevant authority confirms that the nature of the "adverse party" has thus been changed from a single plaintiff to a group being represented by a lead plaintiff.  That transformation instantly terminated the Offer before Gonyer ever accepted.

Third, the Second Circuit's pleading requirements demand sufficient factual and legal allegations to sustain a plausible claim for relief.  As a matter of law, the Notices, entirely devoid of factual or legal allegations, manifestly do not state a plausible claim for relief and thus the opt-in plaintiffs could not have become individual party plaintiffs.  Again, the law is clear; the Notices served to join the opt-in plaintiffs to the collective claim.  As explained, this altered the "adverse party" from Gonyer, to Gonyer plus all the opt-ins.

Fourth, as described above, the Court's decisions on this issue appear to be inherently contradictory.  The Court's first ruling found that Defendant could have crafted the Offer differently, resulting in the termination of the opt-in plaintiffs, thus imputing to Gonyer such power over opt-in plaintiffs.  The October 14th Decision, however, makes that impossible, because the Court reasons that the opt-in Notices imbued the opt-in plaintiffs with their own individual status, in which case an offer to Gonyer could *not* terminate such individuals' claims. If the Court's July 25, 2014 ruling is correct, then the October 14th Decision cannot be correct as well.

In addition, the equities of the case demand reconsideration.  Reversal of the October 14th Decision will permit Gonyer to participate in the case and he will have the opportunity to litigate his claims.  Neither Gonyer nor the opt-in plaintiffs will suffer any prejudice.

Accordingly, Defendant respectfully requests the Court reconsider its October 14th Decision and grant the Motion to Rescind.  Additionally, because the outcome of Defendant's motion for reconsideration may moot the issue of Plaintiffs' counsel's fee application in connection with the Offer, Defendant requests the Court stay the briefing on opposing counsel's fee application until such time as a decision on Defendant's motion for reconsideration has been rendered.  Finally, should the Court choose to deny the instant motion, Defendant respectfully requests the Court, in its ruling, affirmatively state that its determination is a final judgment as to Gonyer so that Defendant may, if it so chooses, file an appeal with the Second Circuit.


Dated:  New York, New York
          October 28, 2014

                                   Respectfully Submitted,
                                   GORDON & REES, LLP

                                   By:   /s/ Mark A. Beckman
                                         Mercedes Colwin, Esq. (MC3862)
                                         Mark A. Beckman, Esq. (MB 6750)
                                         Vincent M. Avery, Esq. (VA 9102)
                                         Attorneys for Defendant
                                         90 Broad Street, 23rd Floor
                                         New York, New York 10004
                                         Phone: (212) 269-5500

On the Brief:

Brian J. Turoff, Esq.
Ronald W. Taylor, Esq.